## D. L. WILSON, Appellant, v. T. K. RIDDICK, *et al.*

**Land Purchase Contract:** VARIANCE BETWEEN DEED AND CONTRACT: Where a contract for the sale of lands designated the several tracts by name, and for further description gave the names of the owners of adjoining tracts forming the boundaries of the lands sold, a deed, in which there is a variance as to the names of the owners of lands described as boundaries, is not objectionable for non-compliance with the contract, where it appears that it is the land intended to be conveyed.

RESCISSION: *Estoppel.* Defendant contracted to convey land to plaintiff at a fixed price per acre, the deed was submitted to plaintiff for examination, and it appeared therefrom that there was a small shortage in acreage, and that title was not in defendant, but in his wife, who signed the deed. No objection was made by plaintiff, and the deed was deposited in escrow as agreed. *Held,* the plaintiff was estopped from afterwards objecting to the shortage and the condition of title, as ground for rescission.

STATUTE OF FRAUDS: *Construction of statute.* Code, 1873, sections 3663, 3664, declaring that no evidence of a contract for the transfer of any interest in land shall be competent unless in writing, etc., does not render inadmissible parol evidence as to the identity of lands described in such contract.

**Appeal:** OBJECTION BELOW. An objection that a contract for the conveyance of a homestead cannot be specifically enforced because the grantor's wife did not sign the contract, cannot be first made on appeal.

*Appeal from Buena Vista District Court.*—HON. LOT
THOMAS, Judge.

TUESDAY, JANUARY 26, 1897.

THE parties, Wilson & Riddick, entered into a
written agreement for the exchange of real estate, the
plaintiff to pay the difference in values. Deeds were
to be placed in escrow to await the completion of the
transaction. Plaintiff's deed was placed in the First
National Bank of Storm Lake, which bank is a party
defendant. Plaintiff brings this action, representing a
breach of the contract for the exchange of the lands,
and asks an injunction to restrain the defendant
bank from delivering the deed, and that the contract
be set aside. The defendant Riddick admits the con-
tract for the exchange of lands, denies a breach
thereof on his part, and, by way of cross-action, avers
a performance on his part, or a readiness so to do,
and asks a decree for specific performance against
plaintiff. The district court gave a decree for defend-
ant, and the plaintiff appealed.—*Affirmed.*

*T. D. Higgs* and *C. D. Goldsmith* for appellant.

*C. A. Irwin* and *A. D. Bailie* for appellee.

GRANGER, J.—I. The facts essential to a con-
clusion are quite extended. They were found by the
district court, and, slightly modified, they are with-
out dispute. They are as follows:
"(1) On the thirtieth day of July, 1894, the plaintiff
and the defendant T. K. Riddick entered into a writ-
ten contract by which said defendant agreed to sell to
the plaintiff certain tracts of land, situated in Fay-
ette county, Tenn., civil district No. 4, and described
as follows: The Boyd place, containing six hundred and

ninety acres; the Watkins place, containing eight
hundred and four acres; the Hall place, containing six
hundred and seventy acres; the Dickinson place, con-
taining five hundred seventy-seven acres; the Salmon
Mills place, containing two hundred acres; the Stewart
place, containing eighty-nine acres; the Winfrey place,
containing one hundred and fifty-two and one half
acres;—total, three thousand one hundred and eighty-
five and one half acres,—at the price of seven dollars
and seventy-five cents per acre for the entire three thou-
sand one hundred and eighty-five and one half acres,
which said land the plaintiff agreed to purchase
and pay for as follows: By warranty deed to pro-
perty then owned by him in the town of Storm Lake,
Buena Vista county, Iowa, at the agreed price
of five thousand, seven hundred dollars; by cash to
be paid January 1, 1895, five thousand dollars; by
note due January 1, 1896, three thousand, four hun-
dred and ninety-six dollars and ninety cents; by note
due January 1, 1897, three thousand, four hundred
and ninety-six dollars and ninety cents; by note due
January 1, 1898, three thousand, four hundred and
ninety-six dollars and ninety cents; by note due Jan-
uary 1, 1899, three thousand, four hundred and
ninety-six dollars and ninety cents. The land is
further described as lying on both sides of the Somer-
ville and Covington road, and bounded generally as
follows:   On the north by the lands of J. S. Rhea and
Mrs. Harvey and Mrs. Morris; on the east by the
lands of Eubanks, Mr. Morris, and the Hobson estates;
on the south by the lands of Rorang, Reichart, Win-
frey, and Watkins; on the west by the lands of
Williams, Wilson, and Robertson.

"(2) The defendant also agreed to furnish the
plaintiff an abstract of the title to said lands on or
before the fifteenth day of August, 1894, and to exe-
cute a warranty deed for said land to Wilson, and

deliver the same to the Fayette County Bank, of Somerville, Tenn., on or before August 20, 1894. And the plaintiff, Wilson, was to furnish the defendant an abstract of title to his Storm Lake property, and execute a warranty deed for the same to Riddick on or before the twentieth day of August, and deliver the same to the First National Bank of Storm Lake, Iowa.

"(3) Wilson was further required to execute to Riddick promissory notes for the last four payments to be made on the land, to be secured by vendor's lien retained on the land. And also to secure to Riddick the payment of the five thousand dollars to be paid January 1, 1895, by depositing with the cashier of the First National Bank of Storm Lake, notes or other valuable securities of the value of five thousand dollars, and to procure and forward to Riddick a certificate of said cashier that said notes or securities, properly indorsed, and made negotiable, had been deposited on or before the fifteenth day of August, 1894.

"(4) Possession of the property on both sides was to be delivered on January 1, 1895, and at that time an exchange of papers was to be had.

"(5) On or prior to August 8, 1894, the plaintiff executed a deed to the Storm Lake property to Riddick in accordance with the terms of said contract, and deposited the same with the First National Bank of Storm Lake, and at the same time deposited with said bank the sum of five thousand dollars, and caused a notification thereof to be made by the president of said bank, and sent to the defendant Riddick, notifying him that the plaintiff had placed in said bank, as per said contract, five thousand dollars cash and a warranty deed to defendant duly executed for the Storm Lake property.

"(6) At the time of the execution of the contract of July 30, the defendant Riddick did not have title to the Tennessee land, but the title thereto was

in the name of Amelia Pulham, who was at that time wife of the defendant. As to whether the plaintiff at or prior to the time the contract was made was informed that the title was in Amelia Pulham, there is a close conflict in the evidence, but I am of the opinion that the evidence is not sufficient to charge him with such knowledge. But about the middle of August, the defendant furnished the plaintiff an abstract of the title to the Tennessee land, and at this time he became informed that the title to the land was in Amelia Pulham.

"(7) After receiving the abstract of the title to the land, the plaintiff went to Tennessee, and saw the defendant Riddick about August 27. Prior to that time it had been ascertained by actual survey that the Boyd place fell short about fifty-nine acres from that stated in the contract, and that the entire piece of land fell short forty-eight and one-half acres, and that in the entire tract there were only three thousand one hundred and thirty-seven acres, instead of three thousand one hundred and eighty-five and one-half acres, as stated in the contract. But Wilson, before he left Storm Lake for Tennessee, had been informed that in a survey of the land there was found to be a shortage.

"(8) The defendant Riddick did not execute and deposit with the Fayette County Bank, of Somerville, Tenn., a deed to Wilson for said land by the twentieth day of August, as required by the contract; but prior to that date Wilson was informed that, owing to some difficulty in completing the survey of that land, it would not be convenient for Riddick to deposit the deed by that time, and, being so informed, Wilson acquiesced in and consented to further time.

"(9) On the twenty-fifth day of August the defendant and his wife executed a warranty deed for the several tracts of land described in the contract to

Wilson, expressing the quantity of land as the total number of acres being estimated at three thousand one hundred and thirty-seven, excepting from the operation and effect of the deed one-half acre on the Watkins place, on which are some graves and monuments; also one acre of land upon which is erected the church called "Pulham Chapel," which is also in the Watkins place.

"(10) During the latter part of August, while the plaintiff was in Tennessee, this deed was exhibited to him for examination and inspection, and for that purpose he retained it several days, and then returned it to Riddick. During this time the deed was read over, and the lines were traced out and compared with the plat of the land in plaintiff's possession, and the plaintiff was fully informed of the shortage in the quantity of the land, and of the reservations made in the deed, and of the form in which the deed was made and executed, and knew at the time that the title was vested in the name of the wife of the defendant Riddick.

"(11) At that time it was mutually understood between the plaintiff and defendant Riddick that the condition of the title and the deed in the form in which it had been executed was satisfactory to both parties, and that the parties would go on and close up the deal, and that plaintiff would take the land, and pay for the actual number of acres in the tract at the rate of seven dollars and seventy-five cents per acre; and with that mutual understanding between the parties Riddick went on and deposited said deed with the bank, as required by the contract.

"(12) The plaintiff went on to make his arrangements to vacate the Storm Lake property, and to take possession of the Tennessee property, thereafter treating the contract as still in force; and during the months of September, October, and the early part of

November gave directions to one R. A. Rhea, who had been the agent of the defendant, Riddick, to manage the land for him, and who was during this time still looking after it for the defendant, and whom the plaintiff had engaged to look after the renting and selling of the land for him in his absence. At various times from the date of his visit in August up to the twenty-second day of November, the plaintiff wrote to Rhea, giving him directions in regard to renting and selling the land, and in every way treating the trade as a fixed fact. In some of these letters he mentioned the fact of one R. H. Brown having commenced a suit against him for the sum of five hundred dollars as commission for services claimed to have been rendered in negotiating the trade with Riddick. And on the twenty-second day of November he wrote a letter to Rhea, saying: "The way things are situated, I consider that I have no interest in the land, or the tenants thereon." But, again, on the twenty-fourth day of November, he wrote to Rhea, saying: "Pay no attention to the letter I wrote you the 22d, only to let Wortham know that I mean to burst up the trade;" and in the same letter directs Rhea to consult with Riddick about renters, and to tell him that he was coming down with others, with his goods.

"(13) On November 6, the plaintiff wrote the defendant Riddick, telling him that R. H. Brown was asserting a claim against him of five hundred dollars, for commission, and that he was threatening to commence suit, and saying: "My goods are all packed, and we are sleeping on a borrowed bedstead. Will you please notify the bank that you declare the trade off, and I will bring the deed with me. I don't want to be detained. At your request, I will sell the house if I don't get over twenty-five hundred dollars for it, or bring the deed to you, and you can deed to whom you please." And, again, on the twentieth day of

November, the plaintiff wrote to the defendant, saying, after referring to the Brown suit: "You consult Rhea in regard to renters. Keep the best. I have four that will come with Livermore and Hall. Keep the Dickinson house for the two families, and the place where the blacksmith lives. You state that your railroad fare would cost nothing to come to Storm Lake and assist me. Your first payment will be ready for you when you get here. Pay no attention to the petition or complaint." The petition and complaint here mentioned has reference to the petition in this case filed on the tenth of November, 1894.

"(14) Prior to the writing of this letter, and on the tenth day of November, the plaintiff filed his petition in the clerk's office, and commenced this action. After the commencement of the action by Brown against the plaintiff, the plaintiff did nothing more towards moving to Tennessee to take possession of the land, nor did he give to the defendant any notice of his purpose in relation to carrying out the contract, other than is contained in the several letters hereinbefore referred to.

"(15) The defendant Riddick appeared in Storm Lake at the January, 1895, term of court, when he was advised that the plaintiff would not proceed further in carrying out the contract for the purchase of the land. But prior to this time Wilson had drawn out of the First National Bank the money that he had formerly deposited, and had requested the bank to return to him the deed to the Storm Lake property. This the bank refused to do.

Up to the time of the commencement of this action, the defendant had complied with all the conditions of the contract, to be performed by him, furnishing to the plaintiff an abstract of title to the Tennessee lands, and making Wilson a sufficient warranty deed, executed by himself and wife, and

deposited the same in the bank, as required by the contract, which was acquiesced in and considered satisfactory, and a sufficient compliance with the contract by the plaintiff, after having a full knowledge of all the facts relating to the land and the condition of the title."

To meet the contentions in this court, there should be added to the foregoing facts, the following: That at the time of making the contract for the exchange of property, the plaintiff was the head of a family and a married man; that the Storm Lake property that the plaintiff was to convey was his homestead; that his wife did not sign the contract for the exchange of lands, but she did sign, with her husband, the deed of the homestead placed in escrow with the defendant bank.

II.    Appellant insists that there can be no decree for specific performance against him, for the reason that his wife did not sign the contract of which specific performance is asked, because the property he must convey under such a decree is a homestead, and his wife did not sign the contract. Reliance is placed on Code, section 1990, as follows: "A conveyance or incumbrance by the owner is of no validity unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." It is said by appellant that there is no such issue in the case, and that seems to be true. Appellant answered the cross-petition, in which the relief by way of specific performance is sought, by denials, admissions, and by pleading matters of defense, but there was no plea to justify the claim of homestead right as a defense. The wife is not a party. The point now urged does not seem to have been presented to the district court. The facts as to the homestead character of the property came into the record only as incidental to other questions. It will be observed that the

district court made no findings on that question, and we think it should not be entertained on this appeal. We try only the issues presented to the court below. *Pierce v. Early*, 79 Iowa, 199 (44 N. W. Rep. 890). A defense not pleaded below will be disregarded on appeal. *Thomson v. Lee County*, 22 Iowa, 206; *Barlow v. Brock*, 25 Iowa, 308; *Lower v. Lower*, 46 Iowa, 525. There are numerous holdings to this effect.

III. It is urged that there can be no decree for specific performance, because the deed placed in escrow by defendant described land different from that described in the contract. With the exception of the shortage shown by the finding of fact, we do not understand but that the deed conveys the land agreed to be conveyed by the contract. It is true, the descriptive language in the contract and that in the deed are somewhat different. Looking to the findings of fact, it will be seen that the three thousand one hundred and eighty-five and one-half acres of land consisted of different "places," severally known as the "Boyd Place," "Watkins Place," etc., and the land is further described as lying on both sides of the Covington road, and bounded on the different sides by other lands, owned by other parties named. By the contract the land is described as bounded on the north by lands owned by J. S. Rhea, Mrs. Harvey, and Mrs. Morris. In the deed it is shown as bounded by lands owned by Eubanks, Garret, Harvey, Seay, and Rhea. There is somewhat of a difference of descriptions as to the other sides of the land, but without doubt it is the land intended to be conveyed. The contract was not to convey by any particular description, but to convey particular land. The identity of the land is shown, more or less, by oral evidence, which appellant says is incompetent under the statute of frauds, reference being had to the provision that oral evidence is not competent to show

a contract for the creation or transfer of any interest
in land except leases for a term not exceeding one
year.   The import of the law is misapprehended.
The sections of the Code are 3663 and 3664, and they
have reference only to evidence to establish *contracts*
for the creation or transfer of interests in land.   The
contract in this case is in writing, by which the inter-
est is created.   The evidence complained of in no way
creates or transfers an interest.   Mainly, it is directed
to the identification of the land with that described
in the contract.   For that purpose it was competent.
The case of *Wilson v. Railroad Co.*, 41 Iowa, 443, is
unlike this.   In that case the contract was by parol.

The fact as to the land being short forty-eight
and one-half acres appears by parol, and it also
appears that after the deed was executed by defend-
ant and his wife it was handed to plaintiff, so
that he knew of the shortage, and the causes
thereof, and with that knowledge he accepted
the deed in escrow; that is, he assented to its being
placed there in execution of the contract on the part
of defendant.   It also appears that the title of the
land, when the contract was made, was in one Amelia
Pulham, who is the wife of defendant.   That fact did
not appear in the contract, but the deed held by plain-
tiff, and assented to by him, and thus placed in
escrow, showed the facts.   We see nothing in these
facts to avoid the contract, or to disturb the decree.
The case is clearly distinguishable from *Luse v. Deitz*,
46 Iowa, 205, and *Zundelowitz v. Webster*, 96 Iowa, 587
(65 N. W. Rep. 835).

It is thought there is a want of mutuality of obli-
gation that should defeat the decree, but we do not
discover it.   In all essential particulars, the contract
as enforced by the decree has met the assent of the
parties, and we do not see an equitable claim against

enforcement. There is no fraud, deception, or unfairness pleaded or claimed. The case is exceptionally strong in its facts to justify the decree, and it will stand AFFIRMED.